IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | CASE NO. BK09-82130-TLS |
| STEVEN ERIC HATCHER & | ) | A09-8071-TLS |
| LEAH MARIE HATCHER, | ) | |
| | ) | |
| Debtor(s). | ) | |
| HOWARD M. RYAN, | ) | |
| | ) | |
| Plaintiff, | ) | CH. 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| STEVEN ERIC HATCHER & | ) | |
| LEAH MARIE HATCHER, | ) | |
| | ) | |
| Defendants. | ) | |

<u>ORDER</u>

This matter is before the court on the plaintiff's motion for summary judgment (Fil. #13) and resistance by the defendant debtor Leah Hatcher (Fil. #22). Ryan J. Lewis represents the defendant, and Ryan D. Caldwell represents the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

In August 2005, the defendant Leah Hatcher became the court-appointed conservator and co-guardian for her father, the plaintiff Howard Ryan, upon the court's finding that physical and mental impairments rendered Mr. Ryan unable to make responsible decisions concerning his person and his finances. The guardianship and conservatorship were terminated in February 2006 upon the court's finding that Mr. Ryan had recovered from his medical problems and was competently making his own decisions and caring for himself. Mr. Ryan believes Ms. Hatcher mishandled his funds and failed to keep adequate records concerning her administration of his estate while she was his conservator. Mr. Ryan filed a state court lawsuit against Ms. Hatcher in 2006 and again in 2008, but each lawsuit was stayed by the debtors' successive bankruptcy filings. The first two bankruptcy cases were filed under Chapter 13 but were dismissed, one for failure to make plan payments and the other for failure to comply with a court order by filing an amended plan. In 2009, the debtors filed the present Chapter 7 case. Mr. Ryan filed this adversary proceeding seeking a judgment of $25,039.25, plus interest, costs, and attorneys' fees, and a finding that the debt is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6). He now has filed a motion for summary judgment on the § 523(a)(4) claim of fraud or defalcation while acting in a fiduciary capacity.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The court must examine the record to ascertain whether the movant, through depositions, answers to interrogatories, admissions, affidavits, and other evidence, has demonstrated the absence of a genuine issue of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006). If the movant has done so, then the non-moving party, bearing the burden of persuasion, must by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial. *Id.* The court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. *Great Plains Real Estate Dev., LLC v. Union Cent. Life Ins. Co.*, 536 F.3d 939, 943-44 (8th Cir. 2008). An issue is genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The following facts have been established:

1. Ms. Hatcher was appointed temporary conservator for Mr. Ryan by the County Court of Douglas County, Nebraska, on or about July 18, 2005.

2. On August 26, 2005, the Douglas County Court found that Mr. Ryan lacked the ability to make responsible decisions concerning his person and to manage and apply his estate to necessary ends, and appointed Ms. Hatcher as his conservator.

3. Mr. Ryan needed a conservator to manage his affairs because he suffered from health complications including a subcranial hematoma, interventricular hemorrhage (bleeding in the brain), stroke, pneumonia, collapsed lung, kidney and liver failure. He also became comatose. At one point while in a coma, Mr. Ryan was not expected to survive more than 24 hours.

4. After his release from the hospital, Mr. Ryan resided in a nursing home.

5. After his discharge from the nursing home, sometime during November 2005, he lived with Ms. Hatcher.

6. Ms. Hatcher did not attend court-ordered conservator/guardianship training.

7. The letters of conservator issued to Ms. Hatcher upon her appointment prohibited the sale of real property belonging to the estate and the payment of compensation to the conservator or her attorney without prior authorization from the court.

8. Ms. Hatcher did not prepare and file a complete inventory of Mr. Ryan's estate within 90 days of her appointment together with an oath or affirmation that the inventory is complete and accurate, as required by Nebraska law.

9. Ms. Hatcher was twice ordered to show cause as to why she did not file an inventory as required by Nebraska law.

10. Ms. Hatcher was discharged as conservator on February 21, 2006, upon the court's finding that Mr. Ryan had recovered and was capable of making his own decisions in financial, personal, and medical matters, and was able to care for himself.

11. In connection with the discharge order, the court also found that Ms. Hatcher had faithfully and justly performed and discharged the duties and obligation which by law and court order where required of her, and that she had fully accounted for and administered Mr. Ryan's estate.

12. In connection with the hearing on the termination of the conservatorship, Mr. Ryan signed a waiver of accounting on February 4, 2006, relieving Ms. Hatcher of the obligation to file an accounting report with the court. He further stated in writing that he approved all acts by Ms. Hatcher as conservator.

13. Ms. Hatcher admits that she used her power of conservatorship to write checks on Mr. Ryan's account to reimburse herself and other family members for items purchased for Mr. Ryan and for gas and time used in connection with visiting Mr. Ryan in the hospital and the nursing home and for readying his house for sale. None of these expenditures were reported to or authorized by the Douglas County Court.

14. After Mr. Ryan recovered, he moved out of Ms. Hatcher's home. She returned all of his financial records and his checkbook to him. She did not go through the records with him to explain the expenditures from his account.

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Under the facts of this case, defalcation while acting in a fiduciary capacity is the only issue.

> The exception under § 523(a)(4) for debts stemming from a dereliction of fiduciary duty requires an "express trust," or at least the existence of a set of strictly defined, legally-imposed duties to avoid self-dealing, under an objectively-manifested, preexisting, and binding relationship. The trust or the relationship must have been established before the action of the debtor that harmed the creditor.

*Murrin v. Scott (In re Scott)*, 403 B.R. 25, 41 (Bankr. D. Minn. 2009) (citing *Hunter v. Philpott*, 373 F.3d 873, 875-877 (8th Cir. 2004); *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir. 1997); *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir. 1993); *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001)).

Nebraska law governing the protection of persons under disability and their property imposes an explicit fiduciary duty on conservators. "In the exercise of his or her powers, a conservator is to

act as a fiduciary[.]" Neb. Rev. Stat. Ann. § 30-2646 (LexisNexis Supp. 2009); *Hanson v. Peck (In re Conservatorship of Hanson)*, 682 N.W.2d 207, 210 (Neb. 2004).

Ms. Hatcher's use of the funds in question occurred while she was acting in a fiduciary capacity to Mr. Ryan, which is one of two necessary elements of § 523(a)(4). The question then becomes whether her conduct constitutes a defalcation, as that term is used in the Bankruptcy Code.

According to the caselaw in the Eighth Circuit, a bankruptcy court can find a "defalcation" under 11 U.S.C. § 523(a)(4) without evidence of bad faith, intentional fraud, or other intentional wrongdoing. The Eighth Circuit Court of Appeals has stated:

> Defalcation is defined as the "misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds." Under section 523(a)(4), defalcation "includes the innocent default of a fiduciary who fails to account fully for money received." . . . An individual may be liable for defalcation without having the intent to defraud.

*Cochrane*, 124 F.3d at 984 (quoting *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1186 (9th Cir. 1996)). *See also Hunter*, 373 F.3d at 875 n.1 (defalcation is generally considered to be a failure to account for money or property that has been entrusted to one).

The phrase "failure to account for" trust property has been interpreted to mean property is missing or the fiduciary has failed to pay it over as he ought. *Zohlman v. Zoldan*, 226 B.R. 767, 777 n.8 (S.D.N.Y. 1998). A failure to apply funds entrusted to a fiduciary in accordance with the terms of the trust is a defalcation, whether intentional or not. *Int'l Fid. Ins. Co. v. Herndon (In re Herndon)*, 277 B.R. 765, 769 (Bankr. E.D. Ark. 2002).

The Eighth Circuit appears to be among the minority of courts with such a strict interpretation of defalcation. Many cases that have found a defalcation by a fiduciary of an express trust seem to have done so on the basis of a misappropriation of funds or some willful act. *See, e.g.*, *Patel v. Shamrock Floorcovering Servs., Inc. (In re Patel)*, 565 F.3d 963 (6th Cir. 2009) (to commit "defalcation" within the meaning of § 523(a)(4), debtor must have been objectively reckless in failing to properly account for or allocate funds); *Banks v. Gill Distrib. Ctrs., Inc.*, 263 F.3d 862 (9th Cir. 2001) (attorney's failure to remit judgment proceeds to third party in attempt to pressure third party to accept less than he was owed and thereby increase attorney's compensation was a breach of his fiduciary duty to client); *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177 (5th Cir. 1997) (defalcation may not require actual intent, but it does require some level of mental culpability; the Fifth Circuit follows a recklessness standard); *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994) (after surveying the breadth of caselaw attempting to define defalcation, the court concluded that a mere negligent breach of a fiduciary duty is not a defalcation, on the basis that exceptions to discharge are to be strictly construed in the debtor's favor); *Lovell v. Stanifer (In re Stanifer)*, 236 B.R. 709 (B.A.P. 9th Cir. 1999) (debtor's failure to pay to former wife, until ordered to do so, certain pension fund proceeds which were entrusted to him as fiduciary under California law was a defalcation); *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283 (B.A.P. 10th Cir. 1997) (defalcation is a fiduciary's failure to account for funds entrusted to him due to any breach of a

fiduciary duty, whether intentional, willful, reckless, or negligent); *San Saba Pecan, Inc. v. Failing (In re Failing)*, 124 B.R. 340 (W.D. Okla. 1989) (lender's president committed defalcation by failing to return borrower's loan commitment deposit when lender was unable to arrange financing); *Pan Am. World Airways, Inc. v. Folliard (In re Folliard)*, 10 B.R. 875 (D. Md. 1981) (if corporate officer and shareholder personally participated in breach of express trust, his personal liability for the loss is nondischargeable whether or not he obtained any personal gain); *Lazzaro v. Weichman (In re Weichman)*, ___ B.R. ___ 2010 WL 276243 (Bankr. N.D. Ind. Jan. 21, 2010) (defalcation more or less requires wrongful, malicious conduct which gives rise to harm); *Mohr v. Tatro (In re Tatro)*, 387 B.R. 833 (Bankr. D. Kan. 2008) (if parent spent minor child's trust fund money to support the child, he may have committed defalcation because payment of support is his legal obligation), *but see Okla Grocers Ass'n, Inc. v. Millikan (In re Millikan)*, 2006 WL 1755960, 188 Fed. Appx. 699 (10th Cir. 2006) (noting disparate definitions of defalcation and stating that it requires, at minimum, "some portion of misconduct"); *Pritchard Concrete, Inc. v. Barnes (In re Barnes)*, 377 B.R. 289 (Bankr. D. Colo. 2007) (the disappearance of loan proceeds is a failure to account for money entrusted to fiduciary and therefore constitutes a defalcation); *Estate of Lola Brewer v. Jones (In re Jones)*, 369 B.R. 340 (Bankr. N.D. Ohio 2007) (financial planner's withdrawal of client funds for his personal benefit is a defalcation); *Wright v. Gulf Ins. Co. (In re Wright)*, 266 B.R. 848 (Bankr. E.D. Ark. 2001) (noting that fraudulent or malicious intent is not required to find defalcation, but something more than mere negligence or innocent mistake must be shown).

A Second Circuit case which considered defalcation under the congruent provision of the Bankruptcy Act delineated the scope of the term in a manner quoted by many courts across the country:

> Colloquially perhaps the word, "defalcation," ordinarily implies some moral dereliction, but in [the early bankruptcy] context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts. . . .
> . . .
> . . . We do not hold that no possible deficiency in a fiduciary's accounts is dischargeable; in *[In] re Bernard*, 87 F.2d 705, 707 [ (2nd Cir. 1937) ], we said that "the misappropriation must be due to a known breach of duty, and not to mere negligence or mistake." Although [misappropriation] probably carries a larger implication of misconduct than "defalcation," "defalcation" may demand some portion of misconduct; we will assume arguendo that it does.
> All we decide is that when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time that it may, he is guilty of a "defalcation" though it may not be a "fraud," or an "embezzlement," or perhaps not even a "misappropriation."

*Cent. Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511-12 (2d Cir. 1937).

The Second Circuit subsequently clarified in a more recent case that a creditor must meet a high standard, holding that a non-dischargeable defalcation requires proof of conscious misbehavior or extreme recklessness. *Denton v. Hyman (In re Hyman)*, 502 F.3d 61 (2d Cir. 2007),

*cert. denied*, ___ U.S. ___, 129 S. Ct. 895 (2009). This criterion thus "ensures that the term 'defalcation' complements but does not dilute the other terms of the provision – 'fraud,' 'embezzlement,' and 'larceny' – all of which require a showing of actual wrongful intent." *Id.* at 68. "By requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation, the standard we adopt today insures that the harsh sanction of non-dischargeability is reserved for those who exhibit 'some portion of misconduct.'" *Id.* at 68-69. The court went on to state that such a standard would not reach debtor-fiduciaries "who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable." *Id.* at 69.

Nevertheless, Eighth Circuit precedent mandates that even the innocent default of a fiduciary who fails to account fully for trust property constitutes a defalcation. Because it is clear from the admissions of Ms. Hatcher that she helped herself to, for example, gas money, compensation for her time, and $7,000 of the proceeds of the sale of Mr. Ryan's home, in part for "lost profit" on the sale of her own home, from Mr. Ryan's account in her fiduciary capacity as his conservator, she incurred a debt through the defalcation of her fiduciary duty. Therefore, under § 523(a)(4), it is not dischargeable.

Ms. Hatcher argues that all of the expenditures were for Mr. Ryan's benefit, that he approved of them, and that he waived the filing of an accounting. I make no findings as to the validity or credibility of her position because it is irrelevant to the issue before the court. She admits that she wrote checks on Mr. Ryan's bank account and charged purchases on his credit card under her authority as conservator, without court permission. The terms of her appointment specifically prohibited such actions. She also admits she did not abide by the statutory requirements for a conservator. Her actions resulted in funds missing from Mr. Ryan's account for which she has not accounted. This is sufficient to render the debt of $25,039.25 nondischargeable.

The complaint contains no claims against Steven Hatcher, although he is named in the caption as a defendant. The evidence and arguments presented on the motion for summary judgment go solely to Ms. Hatcher's conduct as conservator. Accordingly, the complaint will be dismissed as against Mr. Hatcher.

IT IS ORDERED: The plaintiff's motion for summary judgment (Fil. #13) is granted. The debt owed by the defendant debtor Leah Hatcher is excepted from discharge. The complaint is dismissed against defendant debtor Steven Hatcher. Separate judgment will be entered.

DATED: February 25, 2010.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    Ryan J. Lewis    *Ryan D. Caldwell
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.